# IN THE UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# JACKSONVILLE DIVISION

ARCH INSURANCE COMPANY
    Plaintiff,

v.

CULPEPPER CONSTRUCTION
    COMPANY, INC.
        Defendant
_____/

CASE NO.:

DIVISION:

## COMPLAINT FOR DECLARATORY RELIEF AND DAMAGES

Plaintiff, Arch Insurance Company ("Arch"), by and through its undersigned counsel, sues Defendant, Culpepper Construction Company, Inc. ("Culpepper") and alleges:

## THE PARTIES, JURISDICTION, AND VENUE

1. This is an action for declaratory relief in accordance with 28 U.S.C. § 2201(a).

2. Venue is proper in this Court because the construction project for which Arch wrote the performance bond and payment bond at issue in this case is located in St. Johns County, FL. According to Local Rule 1.02(b)(4), Local Rules, United States District Court, Middle District of Florida, the Jacksonville Division of this Court includes St. Johns County.

3. Arch is a corporation organized and existing under the laws of the State of Missouri, with its principal place of business located in the State of New Jersey, that is licensed to write surety bonds in Florida.

4. Culpepper is a corporation organized and existing under the laws of the State of Florida, with its principal place of business located in the State of Florida that transacts business in St. Johns County, Florida.

5. This Court has jurisdiction over this matter according to 28 U.S.C. § 1332(a) because the matter in controversy is between corporations that are citizens of different states. Additionally, Arch seeks damages in excess of $75,000.00, exclusive of interest and costs; and Defendant, Culpepper, has threatened to assert a claim against Arch seeking damages of at least $2,980,037.26. Thus, the value of the matter in controversy exceeds $75,000.00 exclusive of interest and costs.

## GENERAL ALLEGATIONS

6. On or about December 4, 2020, Culpepper entered a Subcontract Agreement (the "Subcontract") with Randall Mechanical Incorporated ("Randall") for certain electrical work (as more fully set forth in the Subcontract) on a project described as "St. Johns County School III" (the "Project"). A copy of the Subcontract is attached as **Exhibit "A."**

7. On or about March 12, 2021, Arch issued a Performance Bond (the "Performance Bond") and Payment Bond (the "Payment Bond") both numbered SU1167261, in the penal sum of $10,469,900.00 naming Culpepper as obligee and Randall as principal in connection with the Subcontract. A copy of the Performance Bond and Payment Bond are attached hereto as **Exhibit "B."**

8. By letter dated October 14, 2022, Culpepper, through its counsel, sent the letter attached hereto as **Exhibit "C,"** stating (among other things) that "Randall is in default of the Subcontract Agreement," without specifying the alleged basis for the default. The letter

further states that "Culpepper has been forced to prosecute Randall's work on its own accord and through others," and demands damages in the amount of $2,980,037.26 under the Bond within seven (7) days.

9. Culpepper unilaterally hired another contractor to perform work within Randall's scope prior to October 14, 2022.

10. The Bond provides, in pertinent part,

§ 3 If there is no Owner Default under the Construction Contract, the Surety's obligation under this Bond shall arise after

.1 the Owner first provides notice to the Contractor and the Surety that the Owner is considering declaring a Contractor Default. Such notice shall indicate whether the Owner is requesting a conference among the Owner, Contractor and Surety to discuss the Contractor's performance. If the Owner does not request a conference, the Surety may, within five (5) business days after receipt of the Owner's notice, request such a conference. If the Surety timely requests a conference, the Owner shall attend. Unless the Owner agrees otherwise, any conference requested under this Section 3.1 shall be held within ten (10) business days of the Surety's receipt of the Owner's notice. If the Owner, the Contractor and the Surety agree, the Contractor shall be allowed a reasonable time to perform the Construction Contract, but such an agreement shall not waive the Owner's right, if any, subsequently to declare a Contractor Default;

.2 the Owner declares a Contractor Default, terminates the Construction Contract and notifies the Surety; and

.3 the Owner has agreed to pay the Balance of the Contract Price in accordance with the terms of the Construction Contract to the Surety or to a contractor selected to perform the Construction Contract.

* * *

§ 5 When the Owner has satisfied the conditions of Section 3, the Surety shall promptly and at the Surety's expense take one of the following actions:

§ 5.1 Arrange for the Contractor, with the consent of the Owner, to perform and complete the Construction Contract;

§ 5.2 Undertake to perform and complete the Construction Contract itself, through its agents or independent contractors;

§ 5.3 Obtain bids or negotiated proposals from qualified contractors acceptable to the Owner for a contract for performance and completion of the Construction Contract, arrange for a contract to be prepared for execution by the Owner and a contractor selected with the Owner's concurrence, to be secured with performance and payment bonds executed by a qualified surety equivalent to the bonds issued on the Construction Contract, and pay to the Owner the amount of damages as described in Section 7 in excess of the Balance of the Contract Price incurred by the Owner as a result of the Contractor Default; or

§ 5.4 Waive its right to perform and complete, arrange for completion, or obtain a new contractor and with reasonable promptness under the circumstances:

.1 After investigation, determine the amount for which it may be liable to the Owner and, as soon as practicable after the amount is determined, make payment to the Owner; or

.2 Deny liability in whole or in part and notify the Owner, citing the reasons for denial.

11.     Randall vehemently denies the propriety of Culpepper's allegation that Randall is in default.

12.     Arch asserts that it has no obligation to Culpepper under the Bond as a result of, among other things: (a) committing an Owner Default based on Culpepper's failure to perform its obligations under the bonded Subcontract including, without limitation, Culpepper's failure to timely pay amounts due Randall, failure to properly schedule and sequence to the work, and delays to Randall's work caused by Culpepper or Culpepper's subcontractors and/or suppliers; (b) failing to comply with the conditions precedent to a claim under the Bond including, without limitation, failure to comply with sections 3.2 and

3.3 of the Bond; (c) failing to allow the surety, Arch, to elect an option under section 5 of the Bond before unilaterally arranging for the performance of work within Randall's scope; and (d) Culpepper's unilateral deduction of bonded Subcontract funds based on alleged claims by Culpepper and alleged costs of Culpepper's unilateral performance of work within Randall's scope without complying with sections 3.2 and 3.3 of the Bond and without giving Arch an opportunity to take action under the Bond after Culpepper should have complied with those conditions precedent to elect an option under section 5 of the Bond.

13. Despite Culpepper's breaches of the Bond, it somehow believes Arch remains obligated under the Bond.

14. Arch has retained the undersigned law firm to represent it in this action and has agreed to pay the reasonable attorneys' fees for the services rendered.

## COUNT I -- CLAIM FOR DECLARATORY RELIEF

15. Arch incorporates and reavers the allegations of paragraphs 1 – 14, above.

16. A bona fide dispute and adverse interest exist between the parties concerning Arch's power, privilege, and/or right under the Bond insofar as Arch believes it is discharged of all obligations under the Bond and has no further liability to Culpepper. Culpepper believes the Bond is still valid as to Arch.

17. Arch seeks certainty as to the existence or non-existence of its obligations under the Bond. Accordingly, Arch has an actual, present, and practical need to have any doubt on this issue resolved and removed.

18. The declaration Arch seeks relates to whether it is liable to Culpepper under the Bond.

19. Thus, there is a case of actual controversy within the jurisdiction of this Court and declaratory judgment in favor of Arch is proper.

## COUNT II -- DAMAGES

20. Arch incorporates and reavers the allegations of paragraphs 1 – 14, above.

21. In addition to discharging Arch's obligation under the Bond, Culpepper's breaches of the Bond and Subcontract also render Culpepper liable to Arch for losses that Arch may sustain on Payment Bond claims; alternatively, Culpepper's breaches of the Bond and Subcontract render it liable to Arch for Payment Bond claims to the extent that such breaches caused, contributed to, or increased the amounts of the claims and/or reduced Subcontract amounts available to satisfy Payment Bond claims.

22. Arch has received claims under the Payment Bond from subcontractors, suppliers, and/or laborers of Randall on the Project of over $1.25 million and may receive additional claims (the "Payment Bond Claims").

23. Culpepper breached the Bond by: (a) committing an Owner Default based on Culpepper's failure to perform its obligations under the bonded Subcontract including, without limitation, Culpepper's failure to timely pay amounts due Randall, failure to properly schedule and sequence the work, and the delays to Randall's work caused by Culpepper or Culpepper's subcontractors and/or suppliers; (b) failing to comply with the conditions precedent to a claim under the Bond including, without limitation, failure to comply with sections 3.2 and 3.3 of the Bond; (c) failing to allow the surety, Arch, to elect an option under section 5 of the Bond before unilaterally arranging for the performance of work within Randall's scope; and (d) Culpepper's unilateral deduction of bonded

6

Subcontract funds based on alleged claims by Culpepper and alleged costs of Culpepper's unilateral performance of work within Randall's scope without complying with sections 3.2 and 3.3 of the Bond and without giving Arch an opportunity to take action under the Bond after Culpepper should have complied with those conditions precedent to elect an option under section 5 of the Bond.

24. As a result of Culpepper's breaches of the Bond and Subcontract set forth above, the work under the Subcontract was delayed and costs were increased; and Culpepper has improperly unilaterally reduced the Subcontract amount available to pay subcontractors, suppliers, and laborers of Randall.

25. Arch, pursuant to its rights of legal and equitable subrogation and a written Agreement of Indemnity with Randall, is entitled to the Subcontract balance, without deduction by Culpepper based on Culpepper's improper actions, to protect Arch from loss in connection with the Payment Bond Claims.

26. Culpepper's breaches further increased Arch's exposure to Payment Bond Claims by extending performance time, increasing performance cost, and depleting Subcontract funds available to pay Payment Bond Claims.

27. Accordingly, Culpepper is liable to indemnify Arch from the Payment Bond Claims and any loss arising therefrom, including Arch's attorneys' fees and costs.

WHEREFORE, Arch requests that this Court enter judgment in its favor and against Culpepper as follows:

1. Enter a declaratory judgment against Defendant declaring that: (a) Arch has been discharged of its obligations under the Bond; (b) Arch has no further obligation,

7

liability, or duty of any kind to Culpepper; and (c) Arch has no liability for any cost, expense, fee, or damage to Culpepper as a result of having issued the Bond; and

2. Ordering Culpepper to indemnify Arch from any and all loss relating to the Payment Bond Claims, whether by settlement, judgment or otherwise, plus all costs and attorneys' fees incurred by Arch in connection with the Payment Bond Claims; and

3. Ordering such further relief as this Court deems proper.

Respectfully submitted:

/s/ Brett D. Divers
ALBERTA L. ADAMS
Fla. Bar No. 80063
Email: aadams@pdtlegal.com
BRETT D. DIVERS
Fla. Bar No. 973246
Email: bdivers@pdtlegal.com
PASKERT DIVERS THOMPSON P.A.
100 North Tampa Street, Suite 3700
Tampa, Florida 33602
Telephone: (813) 229-3500
Facsimile: (813) 229-3502

*Attorneys for Arch Insurance Company*